ISOLA MAY ABEL, Respondent, v. MISSOURI COMMISSION FOR THE BLIND, Appellant.*

In the Springfield Court of Appeals, December 16, 1924.

1. **APPELLATE PRACTICE:** In Trial by Court, Sufficiency of Evidence Only Reviewable Question, in Absence of Finding of Facts and Declarations of Law. In case tried by court without jury, sufficiency of evidence is the only question before the appellate court for review, in absence of finding of facts and of declarations of law.

2. **PENSIONS:** Evidence Held to Show Applicant Entitled to Blind Pension as Possessing Vision not Greater Than "Light Perception." Evidence *held* to show applicant was entitled to blind pension as possessing vision not greater than "light perception," within Acts 1923, p. 303; such person being one not able to recognize form of object placed before the eyes.

3. **APPELLATE PRACTICE:** Trial Court's Findings of Fact Supported by Evidence, not Disturbed. Trial court's findings of fact, supported by substantial testimony, cannot be disturbed by appellate court.

---

*Headnotes 1. Appeal and Error, 4 C. J., p. 655, Section 2546 (Anno); 2. Pensions, 30 Cyc., p. 1378 (Anno); 3. Appeal and Error, 4 C. J., p. 878, Section 2853.

Appeal from the Circuit Court of Maries County.—*Hon. Henry J. Westhues,* Judge.

AFFIRMED.

*Leslie B. Hutchinson,* of Vienna, for Appellant.

(1) The court permitted the plaintiff to offer testimony as to the condition the oculist found her brother's eyes in. This testimony was objected to by the defendant, and was admitted over the defendant's objections. See page 12 of the Bill of Exceptions; Greene v. Gallagher, 35 Mo. 225. (2) The testimony admitted at the trial must be relevant to the issue. Eddy v. Baldwin, 32 Mo. 369; Union Bank v. First National Bank, 64 Mo. App. 253; Hartt v. McNeil, 47 Mo. 526. (3) The testimony of practically all of the witnesses showed that the respondent had more vision than light perception, and if she did she is not entitled to a pension. Session Acts of 1921, Regular Session, pp. 554, 555 and 556; Session Acts of 121, Extra Session, pp. 120 and 121.

*J. Milt Shockley,* of Belle, for respondent.

(1)   The court did not err in allowing testimony as to the condition of the eyes of other parties examined by the witness Dyer, as such testimony was merely offered for the purpose of showing the credibility of the witness' examination and does not affect this case at all upon the merits.   (2)   The court properly overruled the motion for a new trial and did not err therein.   (3) Under the evidence in this case the respondent is entitled to a pension as provided by law.   Section 2, Session Acts 1923, pages 303 and 304.

COX, P. J.—The respondent, Isola Abel, made application for blind pension and on trial in the circuit court, to which the case had gone on appeal, was adjudged entitled to a pension.   The Commission for the Blind appealed to this court.

There was but one question at issue in the trial court and that was whether the extent of vision possessed by respondent was greater than what is meant by the term "light perception" as used in the present statute providing for pensions to the worthy blind.   No finding of facts was made and filed by the trial court and no declarations of law given.   That being true, the only question before us is whether the evidence is sufficient to sustain the judgment of the trial court.

The statute, Acts 1923, page 303, provides that no person shall be eligible to a pension under that act who has vision with or without properly adjusted glasses greater than what is known as "light perception."   In Dahlin v. Missouri Commission for the Blind, 262 S. W. 420, this court expressed its view as to the construction to be put upon that statute.   We there called attention to the fact that not all medical textbooks nor all eye specialists agree as to the extent of vision covered by the term "light perception."   The medical authorities all agree on the minimum of vision required to be denomi-

nated "light perception" which is the mere ability to distinguish light from darkness, but they do not agree as to the maximum amount of vision covered by that term. Some say that if a person can perceive an object in front of the eyes and is able to tell when it moves without being able to discern its form, they have greater vision that light perception. Others say that until a person can discern the form of an object they have no greater vision than light perception. This court in the Dahlin case, supra, adopted the latter view as more in harmony with the spirit of the statute and we there said, page 424: "We do not think that the Legislature intended to exclude from the blind pension those who can merely distinguish between light and darkness or motion or the direction of motion and no more. 'Light perception' as used in the act we construe to mean all that field or scope of vision from the mere ability to distinguish between light and darkness up to the ability to discern form, that is, when one is able to recognize the form of an object such person has a greater vision than light perception." We still adhere to what we then said as to the correct construction to be given the statute and it is by that rule  that the evidence must be weighed by the triers of the facts in determining whether the applicant for blind pension  has  greater  vision  than light perception. If the person is able to recognize the form of an object placed before the eyes, he has greater vision than light perception but until he can do that, he has not greater vision than light perception.

The testimony in this case on part of respondent by her relatives was to the following effect: She is a deaf mute about 38 years of age. When she was 12 to 14 years of age, she could converse to some extent by use of the deaf mute sign language but that she could not so converse now. That she could see practically nothing and had to be led about from room to room and could only go about alone by feeling her way and if she got out of doors some one would have to go to her assistance

and lead her back. Dr. Johnson, a medical college graduate and a regular practitioner, testified that he examined the eyes of the respondent and found what is called a retinitis condition which means a degenerate condition of the retina. He would not say she could not see at all but if she could see, it was very little. He did not think she could go about without stumbling over things. He thought that if an object were placed a foot or a foot and a half from her eyes and she would keep glancing at it, she could see it. Said he knew what light perception is and that she did not have greater vision than light perception. His definition of light perception under the blind pension law was given as the ability to see an object at three feet. Mr. Lehnhoff, an optometrist, testified that he examined respondent's eyes and found the retina in a very bad condition with no indication of any vision at all. In his opinion, she had no vision beyond the mere perception of light. He thought possibly if she were placed in front of a window she might perceive light but could not tell what the window was. Said he placed a large chart in front of her and it seemed that she could perceive there was something there and began to feel.

For the commission, Dr. Dyer, an eye specialist, testified that he examined respondent and he found that she had greater vision than light perception. His definition of light perception was given as the ability to tell the difference between day and night only. A person who could see any letter at any distance or the movement of the hand in his judgment had greater vision than light perception. On cross-examination he stated that in his examination of respondent, she answered his questions by nod of the head and that he communicated with her in the deaf mute sign language. That she told him the name of a large letter which he held before her. He thought she was totally helpless. He also stated that he thought she could walk down the street without stumbling over objects.

It will be observed that there is a sharp conflict in the testimony and one that seems irreconcilable. If the eye specialist is correct in his testimony respondent could see well enough to communicate with him by the use of the deaf mute sign language, which would necessarily mean that she could recognize form, but if the testimony in behalf of respondent is given full weight and credit, any communication with respondent except such as would result from the sense of touch was impossible. The trial court had the witnesses before it and there is nothing in the record before us to indicate that he did not weigh the evidence honestly and fairly and since there was substantial testimony to support the trial court's finding, we cannot change the result.

The judgment will be affirmed. *Farrington* and *Bradley, JJ.,* concur.